LAW OFFICES
PHELPS & MOORE
PROFESSIONAL LIMITED LIABILITY COMPANY
6424 EAST GREENWAY PARKWAY, SUITE 100
SCOTTSDALE, ARIZONA 85254
(480) 534-1400
Jon L. Phelps (027152)
jon@phelpsandmoore.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Shannon Lindner**, for herself and on behalf of all others similarly situated,<br><br>Plaintiff;<br><br>v.<br><br>**American Edge**, a Virginia Corporation; and **John & Jane Does 1-10**; and **Does 1–10**,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>*Jury Trial Demanded* |

Plaintiff Shannon Lindner, on her own behalf and on behalf of all others similarly situated, for her Complaint and cause of action against American Edge alleges as follows upon personal knowledge as to herself and her own acts and experiences:

**I.     PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Shannon Lindner ("Lindner") was a citizen of Arizona at all times material to this complaint.

2. Defendant American Edge ("Edge") is a Virginia Corporation, with its principal office address at 8300 Boone Boulevard, Suite 500, Vienna, VA, 22182.

3. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this Complaint alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 227(E) and 28 U.S.C. § 1391.

5. This Court has personal jurisdiction over Defendant because it purposefully directed tortious and illegal conduct at the forum out of which Plaintiff's claims arise, thus satisfying the requirements of specific jurisdiction because the exercise of *in personam* jurisdiction as to each Defendant comports with "fair play and substantial justice."

## II. SUMMARY OF THE CASE

6. Lindner's allegations are based upon personal knowledge as to herself and her own acts, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

7. Edge is located in Vienna, Virginia.

8. Edge targets Arizona residents with its political messages.

9. Lindner and Class Members have no prior contact, dealings, or relationship with Defendant, and never provided any personal information, including their cellular telephone numbers, to Defendant or otherwise authorized Defendant to contact Lindner and Class Members.

10. Nevertheless, Defendant embarked on an unsolicited campaign of harassment by text call via Multimedia Message Service ("MMS"), causing Lindner and class members injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

11. During the four years prior to the filing of this complaint, Edge, by itself or through an intermediary or intermediaries, made or initiated text calls via MMS to Plaintiff's cellular telephone and made or initiated text calls via MMS (that were identical or substantially the same as those made to Plaintiff) to each of the Class Members.

12. All of the subject text calls via MMS received by Plaintiff and each of the Class Members were made or initiated by or on behalf of Edge without requisite prior "express consent" of Plaintiff or each of the Class Members.

13. Through this action, Lindner seeks injunctive relief to halt Defendant's illegal conduct.

14. Lindner also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

### III. TCPA

15. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an artificial or prerecorded or voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

16. The TCPA (with exceptions that do not apply here) also prohibits the initiation of "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party . . . ." 47 U.S.C. § 227(b)(1)(B).

17. Although the TCPA does not expressly address text messages, the Supreme Court has held that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of" the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), as revised (Feb. 9, 2016).

18. The Ninth Circuit has recently recognized that "a 'text' call could come via MMS (Multimedia Messaging Service), which could include audio sound with an artificial or prerecorded voice." *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1163 n.4 (9th Cir. 2023).

19. The TCPA prohibits communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368 (2012).

20. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

21. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls and text calls whether they pay in advance or after the minutes are used. Moreover, because cellular telephones are carried on their owners' persons, unsolicited text calls transmitted to such devices are distracting and aggravating to their recipients and intrude upon their recipients' seclusion.

22. A defendant must demonstrate that it obtained the plaintiff's prior express consent before using an automatic dialing system or an artificial or prerecorded voice to contact an individual. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23. The FCC has recognized that political calls to cellular telephones using an autodialer or an artificial or prerecorded voice are prohibited by the TCPA absent express consent of the recipient. FCC Rules for Political Campaign Calls and Texts, https://www.fcc.gov/rules-political-campaign-calls-and-texts (last visited Oct. 18, 2023).

24. Lastly, with respect to standing, as recently held by the United States Court of Appeals for the Ninth Circuit:

> Unsolicited [] phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A

4

plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)).

25. Similarly, the United States Court of Appeals for the Second Circuit recently held that the receipt of an unsolicited call "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv, 16-1425-cv, 2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017) (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) (holding that receipt of two brief unsolicited robocalls as voicemail messages was sufficient to establish standing under TCPA); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding that injury under similar TCPA provision may be shown by one-minute occupation of fax machine)).

## IV. GENERAL ALLEGATIONS

26. Defendant embarked upon an intrusive campaign of harassment by text call via MMS to promote its political agenda.

27. On August 30, 2021, Defendant made a text call via MMS using an artificial or prerecorded voice to Lindner's cellular telephone number ending in 4186 ("4186 Number"):



5

28. The MMS message included an audio/video file that was automatically downloaded to Lindner's phone that used an artificial or prerecorded voice to deliver a message.

29. Lindner received the text call via MMS within the State of Arizona, therefore, Defendant's violations of the TCPA occurred within the State of Arizona.

30. Upon information and belief, Defendant caused similar text calls via MMS to be made or initiated to other individuals residing within Arizona.

31. At no point in time did Lindner provide Defendant with her express consent to be contacted by telephone using an artificial or prerecorded voice.

32. Lindner is the sole user of the 4186 Number.

33. It is unknown how Defendant obtained the 4186 Number.

34. The reported phone number for the text responds with a fax machine answer tone.

35. The text call is configured so that it can be sent out *en masse* without variation.

36. Because Plaintiff's cellular telephone alerts her whenever she receives a text call via MMS, receipt of the text call via MMS was a nuisance to Plaintiff, distracted Plaintiff, invaded Plaintiff's privacy, and intruded upon Plaintiff's seclusion.

37. Receipt of Edge's text calls by MMS occupied electronic memory and/or storage on Plaintiff's cellular telephone, and the telephones of each of the Class Members. Further, the text calls by MMS depleted the battery life of those phones and further interfered with the unencumbered access by Plaintiff and each of the Class Members to their respective cellular telephones.

38. Defendant's unsolicited text call caused Lindner actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

39. Defendant's text call also inconvenienced Lindner and caused disruption to her daily life.

## V. CLASS ALLEGATIONS

40. Courts regularly certify class actions seeking redress under the TCPA. *See, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) (affirming certification of provisional class under TCPA).

### A. Proposed Class

41. Lindner brings this case as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and all others similarly situated.

42. The proposed class members (the "Class") are readily ascertainable.

43. The number and identity of the Class are determinable from the records of Defendant.

44. For the purpose of notice and other purposes related to this action, upon information and belief, the names and addresses of the Class are readily available from Defendant.

45. Notice to the Class can be provided by means permissible under FRCP 23.

46. Lindner brings this case on behalf of the below defined Class:

> All persons within the United States (1) who, within the four years prior to the filing of this Complaint; (2) received a text call via MMS; (3) from Defendant or anyone on Defendant's behalf; (4) to the person's cellular telephone number; (5) using an audible artificial or prerecorded voice to deliver a message.

47. Defendant and their employees or agents are excluded from the Class.

48. Lindner does not know the number of members in the Class but believes the number to *at least* be in the thousands, if not tens-of-thousands.

7

B. **Numerosity**

49. Upon information and belief, Defendant has placed text calls via MMS to cellular telephone numbers belonging to thousands of individuals throughout Arizona without their prior express consent.

50. Upon information and belief, the members of the Class are so numerous that joinder of all members is impracticable.

51. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery.

52. Identification of the Class members is a matter capable of ministerial determination from Defendant's records of text calls via MMS.

C. **Common Questions of Law and Fact**

53. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class.

54. Among the questions of law and fact common to the Class are:

   (i) Whether Defendant placed non-emergency text calls via MMS to Plaintiff and Class members' cellular telephones using an audible artificial or prerecorded voice to deliver a message;

   (ii) Whether Defendant can meet its burden of showing that it obtained prior express consent to make such text calls;

   (iii) Whether Defendant is liable for damages, and the amount of such damages; and

   (iv) Whether Defendant should be permanently enjoined from such conduct in the future.

55. The common questions in this case will have common answers. If Lindner's claim that Defendant made text calls via MMS to telephone numbers assigned to cellular

telephone services is accurate, Lindner and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### D. Typicality

56. Defendant has acted on grounds equally applicable to the entire Class, making final relief appropriate to the Class as a whole.

### E. Adequacy of Representation

57. Lindner can fairly and adequately protect the interests of the Class and has no interests antagonistic to the same; to the extent necessary and appropriate, additional putative representatives of the Class may be named as plaintiffs by way of amendment.

58. Plaintiff is represented by counsel who is experienced and competent in both class actions and consumer rights litigation.

59. Counsel is willing and able to devote the resources necessary for the successful prosecution of this action.

60. Lindner will fully and adequately assert and protect the interests of the Class and has retained competent counsel that has previous experience in class action litigation. *Zwicky et. al. v. Diamond Resorts International et. al.*, District of Arizona 2:20-CV-02322-PHX-DJH. Accordingly, Lindner is an adequate representative and will fairly and adequately protect the interests of the Class.

### F. Superiority

61. Class action treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that individual actions would entail.

62. Further, the dollar amounts of each individual claim are too small to economically justify full-blown litigation efforts against Defendant with the result that most of the individual claims of the Class would otherwise go unremedied, and Defendant would be allowed to continue harassing people despite knowing that their conduct is illegal.

63. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

64. Individual litigation would also pose a risk of inconsistent adjudications on identical facts and identical legal issues.

65. Individual litigation may also be dispositive of the interests of the Class, although certain class members are not parties to such actions.

66. For the foregoing reasons, class treatment is superior to all other available methods for the fair and efficient adjudication of this lawsuit as it represents the most efficient and effective use of the Court's limited resources and the most efficient and effective way of vindicating the rights of the Class.

## VI. CAUSE OF ACTION

### 1. COUNT I: VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)

67. All foregoing allegations are incorporated herein by reference.

68. It is a violation of the TCPA "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

69. Defendant – or third parties directed by Defendant – made non-emergency text calls via MMS messages that downloaded a video containing an audible artificial or prerecorded voice to the cellular telephones of Plaintiff and the other members of the Class.

70. These text calls via MMS were sent without regard to whether Defendant had first obtained express permission from the recipient to make such text calls via MMS. In fact, Defendant did not have prior express consent to text call via MMS the cellular phones of Plaintiff and the other members of the putative Class when its text calls via MMS were made.

10

71. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by making non-emergency text calls via MMS that downloaded a video using an audible artificial or prerecorded voice to the cellular phones of Plaintiff and the other members of the putative Class without their prior express consent.

72. Defendant is liable for each such violation of the TCPA.

73. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and Class Members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

74. Lindner and the class are also entitled to a permanent injunction against future calls or text messages.

**WHEREFORE,** Lindner, for herself and on behalf of all others similarly situated, respectfully prays for the following relief:

A. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

B. An injunction prohibiting Defendant from initiating text calls via MMS that include a video that contains an audible artificial or prerecorded voice to telephone numbers assigned to cellular telephones without the prior express consent of the called party;

C. An award of actual and statutory damages;

D. An award of costs and reasonable attorney's fees incurred in the prosecution of the Class claims herein;

E. Certification of the Class for the claim brought herein pursuant to Federal Rule of Civil Procedure 23;

F. Appointing Plaintiff as the representative of the Class;

G. Appointing the law firm representing Plaintiff as Class Counsel; and

H. For such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this <u>31st</u> day of October, 2023.

<u>*/s/ Jon L. Phelps*</u>
Jon L. Phelps (027152)
PHELPS & MOORE PLLC
6424 East Greenway Parkway, Suite 100
Scottsdale, AZ 85254
(480) 534-1400
jon@phelpsandmoore.com